UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN R. TERHUNE,

       Plaintiff,

v.                                                          CASE No. 8:13-CV-2063-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

       Defendant.

_____

O R D E R

       The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]  Because the decision of the Commissioner of Social Security fails to explain adequately the determination that the plaintiff could perform medium exertional work, the decision will be reversed and the matter remanded for further proceedings.

I.

       The plaintiff, who was fifty-three years old at the time his insured status expired and who has the equivalent of a high school education,

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

has worked as a building and grounds keeper (Tr. 43, 61, 200).  He filed a

claim for Social Security disability benefits, alleging that he became disabled

due to acute lower back, hip, leg, and knee pain;  high blood pressure;

depression; anxiety; calf cramping; foot pain and numbness; spinal

abnormalities; osteoporosis in right knee; and a heart attack in 2002  (Tr.

199).  The claim was denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing

before an administrative law judge.   The law judge found that, through his

date last insured of December 31, 2009, the plaintiff had severe impairments

of "history of coronary artery disease; hypertension; osteoarthritis involving

the spine, hips and knees; [and] spondylisthesis" (Tr. 26).   The law judge

concluded that, through the date last insured, the plaintiff "had the residual

functional capacity to perform medium work as defined in 20 CFR

404.1567(c) except that he should avoid concentrated exposure to hazardous

heights and machinery; [and] he can only frequently stoop, crouch and crawl"

(Tr. 29).   The law judge determined that those restrictions precluded the

plaintiff from returning to his past work (Tr. 32).   However, based on the

testimony of a vocational expert, the law judge concluded that jobs existed in

significant numbers in the national economy that the plaintiff could have performed, such as medium exertional work as an auto detailer or dining room attendant, or light work as a mailroom clerk or small products assembler (Tr. 33). Accordingly, the law judge ruled that the plaintiff was not disabled (Tr. 34). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that he became disabled before his insured status expired on December 31, 2009.

42 U.S.C. 423(c)(1); <u>Demandre</u> v. <u>Califano</u>, 591 F.2d 1088, 1090 (5th Cir. 1979), <u>cert</u>. <u>denied</u>, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971), <u>quoting</u> <u>Consolidated Edison Co.</u> v. <u>NLRB</u>, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." <u>Adefemi</u> v. <u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), <u>cert</u>. <u>denied</u>, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported

-4-

by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on several grounds (Doc. 16). The plaintiff argues, among other things, that the law judge failed to identify substantial evidence supporting her determination that the plaintiff had the residual functional capacity to perform a range of medium work. That argument has merit and warrants reversal.

As indicated, the law judge concluded that, through the date last insured, the plaintiff "had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he should avoid

concentrated exposure to hazardous heights and machinery; [and] he can only frequently stoop, crouch and crawl" (Tr. 29). The law judge stated that this "residual functional capacity is supported by the medical evidence of record, the claimant's testimony and reports of his activities of daily living, and the opinions ... of the State Disability Determination Services experts" (Tr. 32). The plaintiff disputes that the law judge's reasons are supported by substantial evidence (Doc. 16, pp. 17-20).

Medium work entails the ability to lift "50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," and standing and/or walking six hours in an eight-hour workday. Social Security Ruling 83-10, 1983 WL 31251 at *6. Thus, "[i]n most medium jobs, being on one's feet for most of the workday is critical." Id. Further, "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping ... [and] [f]lexibility of the knees as well as the torso is important ...." Id.

The plaintiff argues that "the record is devoid of any medical opinions ... that [he] can perform the exertional demands of medium work" (Doc. 16, p. 17). The Commissioner correctly explains that a law judge's

finding that the plaintiff can perform medium work need not be supported by a physician's opinion that he is capable of medium work (Doc. 17, pp. 14-16). See 20 C.F.R. 404.1527(d) (the determination of a plaintiff's residual functional capacity is an issue reserved to the Commissioner); Castle v. Colvin, 557 Fed. Appx. 849, 853-54 (11th Cir. 2014).

On the other hand, the law judge must state the evidentiary basis for that finding. As the plaintiff points out, the residual functional capacity must be "based on all the relevant medical and other evidence" in the case (Doc. 16, p. 18) (citing 20 C.F.R. 404.1520(e), 404.1545(a)). The law judge asserts that her determination of the plaintiff's residual functional capacity is supported by the "medical evidence of record" (as well as the plaintiff's "testimony and reports of his activities of daily living, and the opinions ... of the State Disability Determination Services experts") (Tr. 32). However, it is not apparent what medical evidence the law judge relied upon in finding that the plaintiff was capable of medium work.

In this connection, the record reflects that the plaintiff was treated primarily by Dr. Albert Nestor, who diagnosed the plaintiff during the relevant time period with hypertension, history of coronary artery disease,

"osteoarthritis involving the dorsal, lumbar spine, right and left hips, and right and left knees," and spondylolisthesis (Tr. 346, 358-59, 381).[2] With regard to musculoskeletal impairments, Dr. Nestor's treatment notes reflect that the plaintiff consistently complained of pain in his back, hips, knees, feet, and hands  (Tr. 311, 319, 346, 358).   He also reported swelling in the extremities and occasional numbness in the feet and lower extremities (Tr. 311, 358).  The plaintiff added that walking increases the pain, and that he had difficulty bending over, and getting up from a sitting position (Tr. 311, 319, 358).

Dr. Nestor noted that, upon physical examination, the plaintiff experienced discomfort and pain with extension, flexion, and rotation to sidebending involving the dorsal lumbar spine, and pain with extension and flexion involving the right knee (Tr. 319, 346, 358).  Furthermore, an MRI of the plaintiff's lumbar spine showed "straightening of the normal lordosis

---

[2]Spondylolisthesis "is a condition in which a bone ... in the spine slips out of the proper position onto the bone below it."  www.nlm.nih.gov/govmedlineplus/ency/article/001260.htm.  Symptoms may include lower back pain, stiffness, and weakness in the legs. Id.

suggesting spasm or strain" and "mild to moderate anterior spondylosis L3-4 and L4-5" (Tr. 321).[3]

Additionally, the plaintiff told Dr. Nestor during his initial appointment that he had a heart attack three years earlier (Tr. 358). In this regard, the plaintiff reported experiencing occasional chest pain, a little shortness of breath, and occasional palpitations (Tr. 311, 319, 358).

In November and December 2011, Dr. Nestor completed a Medical Source Statement and provided a narrative opinion of the plaintiff's functional capabilities (Tr. 373-80). He opined that the plaintiff had extreme functional limitations, such as lifting no more than five pounds; sitting, standing and walking less than two hours in an eight-hour workday; and stooping and bending only rarely (Tr. 374, 375). Dr. Nestor opined that these extreme functional limitations related back to February 2009, which is during the plaintiff's insured period (Tr. 375).

---

[3]Lumbar spondylosis is the "fusing or immobilization of one or more vertebral joints." www.spinaldisorders.com/lumbar-sponylosis.html. "When spondylosis occurs, lumbar radiculopathy–with pain, tingling, numbness, and muscle weakness–may result." Id. "Since the lumbar spine carries the bulk of the body weight, degeneration of the vertebrae support may be most noticeable with repetitive movements such as bending or lifting." Id.

The law judge acknowledged Dr. Nestor's treatment of the plaintiff during the insured period and she found, based on Dr. Nestor's records, that the plaintiff had severe impairments of "history of coronary artery disease; hypertension; osteoarthritis involving the spine, hips and knees; [and] spondylisthesis" (Tr. 26; Tr. 27, 31-32). The law judge also mentioned Dr. Nestor's medical source opinion of very restricted functioning, but gave it "little weight" (Tr. 31, 32).

The law judge provided the following reasons for giving Dr. Nestor's opinions little weight (id.):

> This statement contains very restrictive limitations on the claimant's ability to function. This statement, however, was written in late 2011, and includes the claimant's present limitations. Most of these limitations appear to be based upon impairments - - - such as diabetes, diabetic neuropathy and cerebral vascular accident - - - that arose after the date last insured of December 31, 2009. In addition, despite Dr. Nestor's opinion that these limitations existed before the date last insured, a review of Dr. Nestor's treatment notes taken during the time in question reveal that they do not mention such severe restrictions. (See e.g., Exhibit 8F). If the claimant truly had such restrictive limitations prior to the alleged onset date, then one would have expected to see much more aggressive treatment from Dr. Nestor.

These reasons provide good cause for not giving Dr. Nestor's reasons substantial or considerable weight. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

While the law judge adequately explained the rejection of Dr. Nestor's opinion of extreme limitations, the law judge does not provide justification for her finding that the plaintiff can perform medium work. Thus, the law judge does not identify, nor is it apparent from the record, the medical evidence the law judge relied upon in determining that the plaintiff could perform medium work, which would require the plaintiff to lift and carry 50 pounds occasionally and 25 pounds frequently, while standing or walking for most of the workday.

Although the law judge reasonably discounted Dr. Nestor's opinion of extreme limitations, that does not permit the conclusion that the plaintiff had little functional limitations. Significantly, Dr. Nestor's treatment notes identify, among other things, consistent pain and discomfort upon physical examination of the plaintiff's musculoskeletal system.

Further, in finding that the plaintiff could perform medium exertional work, the law judge also does not seem to give any weight to her

own finding that the plaintiff had severe impairments of "history of coronary artery disease; hypertension; osteoarthritis involving the spine, hips and knees; [and] spondylisthesis" (Tr. 26). See 20 C.F.R. 404.1520(c) (a severe impairment "significantly limits [the claimant's] physical ... ability to do basic work activities"). Thus, the performance of medium exertional work by a 53-year old man with a combination of severe impairments, including back, hip, and knee problems, seems very questionable. Because the law judge fails adequately to explain what medical evidence she relied upon in concluding that the plaintiff could do medium work as of the date last insured, the court cannot meaningfully review that dubious determination. Lewis v. Callahan, supra; Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986); Ryan v. Heckler, 762 F.2d 939, 941-42 (11th Cir. 1985).

Additionally, the plaintiff correctly points out that the two other reasons given by the law judge for finding the plaintiff could perform medium work are not supported by substantial evidence (Doc. 16, pp. 18-19). Thus, the law judge stated that her determination of the plaintiff's residual functional capacity was also supported by "the claimant's testimony and

reports of his activities of daily living, and the opinions ... of the State

Disability Determination Services experts" (Tr. 32).

However, as the plaintiff persuasively argues, the plaintiff's

daily activities do not show that he could perform medium work (Doc. 16, p.

19). Thus, the law judge found that the plaintiff's daily activities included

light housework, walking the dog, cooking meals, going to the grocery store,

and playing board games (Tr. 27-28, 30). The law judge did not explain how

these seemingly light exertional activities show that the plaintiff was capable

of medium work. Notably, the Commissioner does not have a meaningful

response to this argument, as she merely asserts that the law judge's

determination of her residual functional capacity did not rely solely on the

plaintiff's activities of daily living (Doc. 17, p. 13).

Moreover, the plaintiff contends that, contrary to the law judge's

assertion, "the opinions ... of the State Disability Determination Services

experts" do not support a finding that he could perform medium work (Doc.

16, pp. 18-19; see Tr. 32). Rather, Dr. Thomas Renny conducted a case

analysis and opined that there was "insufficient evidence" regarding disability

during the insured period (Tr. 330). Thus, no state reviewer (or any other

medical expert) expressed the opinion that the plaintiff was capable of medium work. The Commissioner has no response to this contention, as she did not acknowledge that the law judge cited the opinions of the state disability experts (one of whom does not appear to be a doctor (Tr. 290)) in support of her determination that the plaintiff could perform medium work (see Doc. 17, p. 16) (the Commissioner asserts that the law judge relied upon the medical records and the plaintiff's activities of daily living to support the residual functional capacity determination).

In sum, the law judge fails to identify and explain adequately the medical evidence she relied upon in determining that the plaintiff was capable of performing a wide range of medium work, so that determination cannot be meaningfully reviewed. See  Gibson v. Heckler, supra;  Ryan v. Heckler, supra. Further, the other two reasons the law judge gave for finding that the plaintiff could perform medium work do not support that conclusion. Therefore, the matter must be remanded to the Commissioner for further consideration.

It is noted that the plaintiff asserted two other arguments.  In light of the remand, it is appropriate to pretermit those arguments, as a new decision will be generated on remand.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **REVERSED**, and the matter is **REMANDED** for further proceedings. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 16th day of September, 2014.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE